127 15
134 316

FINNEGAN *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROADS — PERSONAL INJURIES — PERSON ON TRACK — GROSS NEGLIGENCE.

Where, in an action against a railroad company for running down plaintiff's decedent while walking along the track, it appeared that decedent had been on the track but a very short time, that the track curved sharply at that point, that the engineer was on the outside of the curve, so that he could see ahead but a short distance, and that the fireman's attention was directed chiefly to the station ahead, and his view somewhat obscured by smoke from an engine on an intersecting track, there was nothing to justify a finding of gross negligence on the part of defendant's servants, so as to remove the bar of decedent's contributory negligence, and a verdict should have been directed for defendant.

Error to Washtenaw; Kinne, J. Submitted February 12, 1901. Decided June 4, 1901.

Case by William Finnegan, administrator of the estate of Don Finnegan, deceased, against the Michigan Central Railroad Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Reversed.

*Lawrence & Butterfield,* for appellant.

*Lehmann Bros. & Stivers,* for appellee.

MONTGOMERY, C. J. On the 10th of August, 1898, one Greenman, who was in the employ of defendant, and Don Finnegan, a boy 15 years old, were struck by an engine of the defendant, and killed. The tracks of the Michigan Central Railroad Company at Ann Arbor, going towards Chicago, from the passenger house, for about 600 or 800 feet, run in a westerly direction, and then take a sharp curve in a northwesterly direction. At nearly the stiffest point of the curve is located the overhead

bridge of the Ann Arbor Railroad Company. East of the railroad is the embankment and dam of the Ann Arbor Milling Company, and a short distance from the overhead bridge of the Ann Arbor Railroad, on the west side of the tracks, are Kyer's gristmill, a cooper shop, and stock yards. On the southwest side of the mill pond, and adjacent to the railroad grounds, there were a number of private boat-houses, that had been there for 15 or 18 years. There was, at the time of the accident, one public boat-house adjoining the railroad, and upon land owned by the Ann Arbor Milling Company, which one Paul Tessmer held possession of under a lease from the milling company. There was a platform or gangway which rested at one end upon the embankment of the railroad. The railroad premises opposite these boat-houses were unfenced, and were a part of the depot yards of the defendant. On the west side of the tracks, between the gristmill and the cooper shop, is an open space; also one between the cooper shop and the stock yards. Many persons, for many years, have been accustomed to pass through these openings, and cross the tracks of the Michigan Central Railroad Company, for the purpose of going either to the boat-house of Tessmer, or to go skating or swimming, or to pass over the milldam. A majority of the people who frequented this locality came on the tracks near the passenger house, and walked up to the mill pond. On this right of way of the railroad company there is no well-defined path or passageway, but people crossed wherever it suited their convenience, as the grounds were open, and one part of the right of way was as good as another for that purpose, it all being level and hard. There was no indication of any beaten path over the tracks. There was a beaten path near the cooper shop, and one near the stock yards; but there was no fence along the railroad, and persons crossed most anywhere. The tracks of the defendant, at about the point where the bridge of the Ann Arbor road crosses its right of way, make a sharp curve in a northwesterly direction, and run nearly straight, for over

half a mile, towards what is known as the "Whitmore-Lake Crossing."

On the 10th day of August, 1898, Mr. Greenman was employed by the defendant to work in its freight house, and also to attend to lighting the switch lamps west of Ann Arbor station. In the afternoon of the day above mentioned he was seen, about 2 o'clock, going up the track to attend to his duties. When he was returning down the tracks, coming from his work, the plaintiff's intestate was with him. There is a little shop about 500 feet west of the Ann Arbor bridge, occupied by a car inspector. Mr. Greenman and Don Finnegan were seen to pass this little shop on their way east down the tracks, about 15 or 20 minutes before the mail train, which was due at Ann Arbor at 3:47 p. m., came along. There is no testimony in the case to show where Greenman and Finnegan were from the time they passed the inspector's shop until they were seen by Mrs. Hattie Hurst as they were about to cross the tracks. Her testimony is as follows:

"*Q.* About what time did this happen, as near as you can tell?

"*A.* About 5 o'clock.

"*Q.* Did you see the men when they were struck,—the little boy?

"*A.* I saw the man and the boy when they were struck.

"*Q.* Which way did you look when you saw them?

"*A.* I was looking towards the way the train was going,—towards the city.

"*Q.* Where were the man and the boy with reference to the Ann Arbor bridge that is over the Michigan Central? Were they towards the depot or towards you from the bridge?

"*A.* Towards the depot.

"*Q.* About how far beyond the bridge were they when they were struck, as near as you can tell?

"*A.* I think they were the other side of the dam.

"*Q.* About opposite the dam?

"*A.* Yes; about there.

"*Q.* Which one was on the right-hand side?

"*A.* The boy was on the side next to the river, and the man was on the side next to Main street.

127 MICH.—2.

"*Q.* Where were the boy and the man the first time you noticed them at all on that day?

"*A.* The first time I noticed them they were going across the track. When I saw the cars coming, they were just starting across, and I thought to myself, ' It is the 5 o'clock train coming.' I looked down for my husband, and did not see him, and in that time they caught the boy and the man."

There was testimony tending to show that the bell was not ringing on the engine, and that no signal was given.

The circuit judge, while expressing doubt as to whether a case had been made out, submitted the case to the jury, under instructions in which it was stated that the decedent was chargeable with contributory negligence, but left it to the jury to find whether the defendant's servants were guilty of gross negligence. The contention of plaintiff's counsel is that the engineer and fireman were not giving attention to the track ahead of them, or they would have seen Greenman and the decedent walking on the track; and they seek to bring the case within that of *Battishill* v. *Humphreys*, 64 Mich. 514 (38 N. W. 581). The course of the argument is that it is, upon the whole testimony, open to inference that the decedent and Greenman had been walking upon the track, for some distance, where they might have been seen, and that, if the fireman had looked along the track constantly, he would have seen them earlier. As a matter of fact, he did not see them until within a very few feet of where they were struck.

We think a fair reading of the testimony does not show that Greenman and decedent had been walking along the track for any considerable distance. It is true that, immediately before they were struck, they were on the track, with their backs to the approaching train; but the testimony introduced by plaintiff, and quoted above, shows that they had just started to cross the track. Neither is the evidence of inattention on the part of the trainmen such as to warrant a charge of gross negligence. The engineer, being on the outside of the curve, could not see far ahead. The fireman was required to look ahead to

the station, to see that all was clear there. For a time, his view was obstructed by smoke from the Ann Arbor train. It is only by the most careful figuring that it is attempted to be shown that, had the attention of the fireman been given at just the precise point of time, he would have seen the parties on the track, if they were then there. As we have already pointed out, the testimony of plaintiff's witness shows that they were not there until just before they were struck. There was no evidence of gross negligence on the part of the trainmen, and a verdict should have been directed.

Judgment reversed, and a new trial ordered

The other Justices concurred.