DEUR v NEWAYGO COUNTY SHERIFF

Docket No. 63024. Submitted March 3, 1983, at Grand Rapids.—
     Decided May 5, 1983. Leave to appeal granted, 417 Mich 1035.

Marvin R. Deur was arrested pursuant to a governor's warrant
     issued in response to a demand from the State of Maryland
     made under the Uniform Criminal Extradition Act. Deur is
     charged in Maryland with criminal responsibility for the
     deaths of three persons in a motor vehicle accident which
     resulted from a brake failure on a truck owned by Deur. Deur
     was not in Maryland himself, but he is charged with specifi-
     cally and affirmatively refusing to authorize necessary repairs
     to the brakes although he knew of their unsafe condition. Deur
     brought a complaint in the Newaygo Circuit Court for a writ of
     habeas corpus, naming as defendants the Newaygo County
     Sheriff and Prosecuting Attorney and the State of Maryland.
     The court granted the writ, holding that Deur had not commit-
     ted any act in Michigan intentionally resulting in the crime
     with which he is charged. The sheriff and prosecuting attorney
     appeal. *Held:*

     1. The portion of the act allowing extradition of persons who
     were not in the demanding state at the time of commission of
     the crime and have not fled therefrom requires only that the
     accused's act be intentional, not that the accused intended the
     commission of the crime. The question of whether the demand-
     ing state has made a sufficient claim of intent is to be decided
     by an examination of all supporting documents. In this case,
     the claim of intent was sufficient.

     2. The decision of the governor to honor a request for
     extradition is discretionary where the extradition papers are
     sufficient to bring the case within the governor's authority. The
     courts may not breach the doctrine of separation of powers by
     reviewing the governor's exercise of discretion.

     Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 31 Am Jur 2d, Extradition §§ 6, 24, 47.
[2] 31 Am Jur 2d, Extradition §§ 65, 74.

1. EXTRADITION — INTENTIONAL ACT — SUFFICIENCY OF DEMAND.

    The proper interpretation of the portion of the Uniform Criminal Extradition Act which provides for extradition of a person charged with "committing an act" in this state "intentionally resulting in a crime" in the state seeking extradition is that it is the act, rather than the crime, which must be intentional; in deciding the sufficiency of another state's request all supporting documents must be examined to determine whether a claim of intent is made (MCL 780.3a; MSA 28.1285[3-1/2]).

2. EXTRADITION — JUDICIAL REVIEW.

    Only the narrowest possible judicial inquiry will be made in extradition matters.

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. Vander Ploeg* and *Steven C. Kohl,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Keith J. Schuiteman,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for defendants.

Before: D. E. HOLBROOK, JR., P.J., and D. F. WALSH and J. C. KINGSLEY,* JJ.

PER CURIAM. Defendants appeal by right a February 24, 1982, order of the Newaygo County Circuit Court ordering plaintiff's release from confinement pursuant to plaintiff's complaint for a writ of habeas corpus.

By warrant of the Honorable William G. Milliken, Governor of the State of Michigan, dated September 21, 1981, in response to the request dated June 19, 1981, by the Governor of the State of Maryland, defendant's extradition to that state on a charge of manslaughter by motor vehicle was authorized. The extradition falls within the confines of MCL 780.3a; MSA 28.1285(3-1/2), § 3a of the Uniform Criminal Extradition Act, which

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

deals with the extradition of non-fugitives. Although plaintiff was never in the State of Maryland at any relevant time, he is charged with criminal responsibility for the deaths of three persons in a motor vehicle accident.

Plaintiff is the owner of a tractor-trailer rig which he had leased to a company known as Direct Transit Lines, Inc. The tractor is licensed to operate, *inter alia,* in the State of Maryland, the the license being issued in plaintiff's name. The lease agreement specifically obligates plaintiff to maintain the vehicle in safe and proper working condition.

Accompanying the extradition request are numerous documents, including a study of the accident in question by the National Transportation Safety Board and supporting affidavits by investigating law enforcement officers of the State of Maryland. Investigation indicates that plaintiff, although being apprised by several different drivers of his rig over the course of several months that the brakes were not working properly, specifically and affirmatively refused to authorize repairs deemed necessary by attending mechanics, instead opting for superficial repairs which corrected the symptoms but not the underlying mechanical problems.

On February 19, 1981, the rig, while being driven by Robert Keyser, a Direct Transit employee, in consequence of brake failure went out of control on a mountainous downgrade. Before it could be brought to a safe stop on a subsequent upgrade, it collided with another tractor-trailer, caroming so that when it came to a stop it smashed into 14 cars, killing three persons and injuring seven others. A resulting fire led to the hospitalization of five members of the responding

volunteer fire department and possible smoke inhalation injuries to six other persons.

Among the supporting documents is an affidavit by Donald C. Maiers, a Maryland state policeman, who investigated the accident and interviewed both witnesses and other investigators, wherein he concludes:

"Your affiant believes, based on his personal observations, interviews conducted, and information received, Marvin Robert Deur had intentionally and knowingly adopted and enforced a policy of poor maintenance of the vehicle leased to Direct Transit, Inc., and other vehicles similarly leased. These activities of Deur directly contributed to the incident which resulted in the deaths of three persons in Frostburg, Maryland, on February 18, 1981."

In relevant part, § 3a of the Uniform Criminal Extradition Act provides:

"The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom, and the requirements contained in subdivisions (d) and (e) of section 3 of this act shall not apply to such cases."

Section 3 of the act provides in pertinent portion:

"No demand for extradition of a person charged with a crime in another state shall be recognized by the

governor unless in writing, accompanied by the following papers:

"(1) Governor's requisition under the seal of the state;

"(2) Prosecutor's application for requisition for the return of a person charged with crime, wherein shall be stated:

"(a) The name of the person so charged;

"(b) The nature of the crime;

"(c) The approximate time, place and circumstances of its commission;

\* \* \*

"(f) The state in which he is believed to be, including the location of the accused therein, at the time the application is made; certifying that, in the opinion of the said prosecuting attorney, the ends of justice require the arrest and return of the accused to the demanding state for trial, and that the proceeding is not instituted to enforce a private claim;

"(3) verification by affidavit of said application, which shall be accompanied by certified copies of the indictment returned, \* \* \* stating the offense with which the accused is charged \* \* \*. Affidavits or documents as the prosecutor may deem proper may be submitted with such application;

"(4) Executive warrant, under the seal of the state, authorizing agent, therein named, to receive the person demanded;

"(5) The indictment \* \* \* made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment \* \* \* must be authenticated by the executive authority making the demand." MCL 780.3; MSA 28.1285(3).

The authenticity of the documents in the present case is not challenged, and it was stipulated in the circuit court that § 3a of the Uniform Criminal Extradition Act is constitutional, as this Court held in *Eroh v Manistee County Sheriff,* 86 Mich App 545, 549-550; 272 NW2d 720 (1978).

The crucial language, therefore, is that portion of § 3a which requires that the accused be charged with "committing an act in this state * * * intentionally resulting in a crime in the state whose executive authority is making the demand". The adverb "intentionally" does not, grammatically or phraseologically, modify the noun "crime" but the participial phrase "committing an act". To construe the statute otherwise would raise ignorance of the law to the level of a complete defense, and would also mean that deliberate acts not intended to have criminal consequences would carry with them no criminal responsibility.

Moreover, the question of intent is one of form; the statute requires only that the criminal charge made by the demanding state implicate the accused in an intentional act. The issue of intention need not be determined solely by examining the indictment, the request for rendition, or the governor's warrant. All supporting documents must be examined to determine whether a claim of intent is made. As the court held in *Ex parte Harrison,* 568 SW2d 339, 342 (Tex Crim App, 1978):

"However, we believe the better practice is to judge the substance of the charge upon which the extradition is based by considering the 'charging instrument' in conjunction with the supporting requisition documents. This Court followed that rule, without articulating it, in *Ex parte Malone* [378 SW2d 330 (Tex Crim App, 1964)]. In that case the indictment charged a violation of the Arkansas Hot Check Law and there were no allegations in the indictment that any acts were committed in Texas or in a third state intentionally resulting in a crime in Arkansas; however, this court stated:

" 'The affidavits of the prosecuting attorney and the prosecuting witness show that although appellant's acts were committed in this state, they intentionally resulted in a crime in Arkansas, which under Sec. 6 * * *

authorized appellant's surrender on demand of the governor of Arkansas, even though he was not in that state at the time of the commission of the crime and had not fled therefrom.'

"For cases from other jurisdictions which have looked beyond the 'charging instrument' to other requisition documents to determine the adequacy of the 'charge' in extradition cases, see *Greenbaum v Darr,* 220 Kan 525; 552 P2d 993 (1976); *State of Kansas v Holeb,* 188 Neb 319; 196 NW2d 387 (1972); *In re Cooper,* 53 Cal 2d 772; 3 Cal Rptr 140; 349 P2d 956 (1960), *app dis* and *cert den* 364 US 294; 81 S Ct 104; 5 L Ed 2d 83 (1960); *In re Harris,* 170 Ohio St 151; 163 NE2d 762 (1959); and *Ex parte Arrington,* 270 SW2d 39 (Mo Sup Ct, 1954)."

In the present case, it is clear that Deur is charged with committing an intentional act in Michigan which resulted in the crime of manslaughter in Maryland. While in Michigan, Deur intentionally refused to authorize needed repairs to the brake system of the tractor-trailer rig, knowing, by virtue of having licensed the rig for operation in Maryland, that it would be driven in that state. It was Deur's self-imposed contractual obligation to maintain the vehicle, and the fact that it was in the custody and control of Direct Transit, Inc., does not absolve him of liability where, as here, part of the evidence relied upon in bringing the charge is that Direct Transit's drivers repeatedly asked Deur to authorize the repairs and he refused. This is not a situation in which Deur was prevented from fulfilling his contractual obligations.

The issue is strictly one of whether the extradition papers, on their face, are sufficient to bring the case within the governor's statutory, discretionary authority.

"Petitioner argues further that he can be extradicted

only after a finding by the trial court that he committed an intentional act that resulted in a crime in California. To rebut the allegation of intent in the warrant [failure to pay child support], he offered evidence that he was financially unable to make the support payments. We do not construe the statute to require that the trial court find that the accused committed an intentional act. Rather, the question of intent is relevant only to the sufficiency of the demand for extradition. It is not an element to be proved in the responding state. Instead, it is a jurisdictional fact which must appear from the face of the supporting documents. See *Hagel v Hendrix,* 302 SW2d 323 (Mo App). Accordingly, the basis for extradition in the instant case is that Conrad has been charged in California in the manner provided in Section 60-1-3 * * *. The trial court was therefore under no duty to admit the evidence offered to prove Conrad was financially unable to make the support payments." *Conrad v McClearn,* 166 Colo 568, 571-572; 445 P2d 222, 224 (1968).

Additionally, it should be noted that § 3(3) of the statute specifically contemplates that various supporting documents may and will often be submitted in support of the extradition request, and these must be considered together with the indictment and request for extradition. Like the majority of jurisdictions, Michigan entertains only the narrowest possible judicial inquiry in extradition matters. *Eroh, supra; Brown v Wayne County Sheriff,* 415 Mich 658; 330 NW2d 335 (1982). This is particularly appropriate where, as here, the decision of the Michigan governor to honor the request for extradition is discretionary; it is not for the courts of this state to breach the doctrine of separation of powers, Const 1963, art 3, § 2, by reviewing the governor's exercise of discretion.

Reversed.