DEUR v NEWAYGO SHERIFF

Docket No. 71785. Argued March 6, 1984 (Calendar No. 2).—Decided December 28, 1984. Released January 17, 1985. Certiorari denied by the Supreme Court of the United States on June 3, 1985, 86 L Ed 2d 694 (1985).

Marvin R. Deur brought an action in the Newaygo Circuit Court against the sheriff and prosecuting attorney of Newaygo County, the State of Michigan, and the State of Maryland for a writ of habeas corpus. The court, Terrence R. Thomas, J., granted Deur's petition and discharged him from custody, finding that the papers charging him with a crime in Maryland and seeking his extradition did not have the effect of charging him with having committed an act in Michigan intentionally resulting in the crime with which he was charged in Maryland. The Court of Appeals, D. E. Holbrook, Jr., P.J., and D. F. Walsh and Kingsley, JJ., reversed, holding that under the non-fugitive extradition statute there need not be an intention that a crime result in the demanding state, but rather only that the act committed in the asylum state be intentional and subsequently result in a crime in the demanding state (Docket No. 63024). The plaintiff appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice Williams and Justices Levin and Cavanagh, the Supreme Court held:

The non-fugitive extradition provision of the Uniform Criminal Extradition Act requires that an accused who is not a fugitive from the state demanding extradition have committed an act in the asylum state coupled with an intent that such act result in a crime in the demanding state.

1. Generally, no state can by its laws directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. In adopting the Uniform Criminal Extradition Act, the Legislature intended that where a sister state demands extradition of a person in Michigan who is not a fugitive from the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Extradition § 19.

[2, 3] 31 Am Jur 2d, Extradition § 31.

[3] 31 Am Jur 2d, Extradition § 33.

Necessity that demanding state show probable cause to arrest fugitive in extradition proceedings. 90 ALR3d 1085.

sister state the person whose extradition is sought must have intended that an act committed in Michigan result in a crime in the demanding state. Thus, a crime resulting from negligence does not meet the requirement of the act.

2. In this case, Maryland seeks to give extraterritorial effect to its penal statute that seeks to regulate unintentional conduct. It is apparent from the facts that the plaintiff did not intend that the act he committed in Michigan result in the crime of which he is charged in Maryland. Because the requirements for a valid extradition under the act were not met, the writ must be reinstated.

Justice Brickley, concurring, agreed that the non-fugitive extradition statute requires that an act committed by the accused in the asylum state must have been done with the intent that the crime result in the requesting state, but noted that there was nothing in the requesting papers in this case which indicated that the plaintiff committed an act in Michigan which he intended would result in a crime in Maryland, therefore entitling him to habeas corpus relief.

Reversed.

Justice Ryan, joined by Justice Boyle, dissenting, stated that the allegation in the application for requisition by a Maryland state's attorney that the plaintiff is alleged to have performed acts in Michigan "intentionally resulting in a crime" in Maryland was sufficient to permit the plaintiff's extradition.

125 Mich App 642; 336 NW2d 852 (1983) reversed.

### OPINION OF THE COURT

1. EXTRADITION — NON-FUGITIVE — INTENT TO COMMIT CRIME.

Extradition from Michigan of a person accused of a crime in a sister state who is not a fugitive from that state may occur only where the accused committed an act in Michigan with an intent that such act result in a crime in the demanding state (MCL 780.3a; MSA 28.1285[3-1/2]).

### CONCURRING OPINION BY BRICKLEY, J.

2. EXTRADITION — NON-FUGITIVE — INTENT TO COMMIT CRIME.

*Failure of a demanding state to indicate in its request for the extradition of a person in Michigan who was not a fugitive from the demanding state that the person committed an act in Michigan that was intended to result in a crime in the demanding state rendered the request inadequate (MCL 780.3a; MSA 28.1285[3-1/2]).*

DISSENTING OPINION BY RYAN, J.

3. EXTRADITION — NON-FUGITIVE — INTENT TO COMMIT CRIME.

*An explicit allegation in an application by a state's attorney of a sister state and a Michigan Governor's warrant that a non-fugitive in Michigan had performed acts in Michigan intentionally resulting in a crime in the sister state was sufficient to permit the Governor of Michigan to order the person's extradition; the absence of such an explicit assertion in the extradition request by the Governor of the sister state and in an affidavit by a police officer of that state was not fatal to the jurisdiction of the Governor of Michigan (MCL 780.3a; MSA 28.1285[3-1/2]).*

*Landman, Luyendyk, Latimer, Clink & Robb* (by *Jon D. VanderPloeg* and *Steven C. Kohl)* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Keith J. Schuiteman,* Prosecuting Attorney, and *Thomas L. Casey,* Assistant Attorney General, for the defendants.

KAVANAGH, J. This case concerns the construction of the non-fugitive extradition statute, being MCL 780.3a; MSA 28.1285(3-1/2) of the Uniform Criminal Extradition Act. MCL 780.1 *et seq.;* MSA 28.1285(1) *et seq.*

Plaintiff was arrested on a warrant issued by the Governor of Michigan on a request for extradition by the Governor of Maryland. The Maryland Governor's request was based upon plaintiff's indictment by a Maryland grand jury for the crime of manslaughter by motor vehicle, Art 27, § 388 Maryland Compiled Laws, a misdemeanor carrying a three-year maximum penalty.

The charge arose out of an accident in Frostburg, Maryland, involving a tractor-trailer rig owned by plaintiff. The accident was described in the report of the National Transportation Safety Board:

"On February 18, 1981, a tractor-semitrailer loaded

with building supplies was traveling eastbound on US Route 40, a two lane mountain highway approaching Frostburg, Maryland. The combination vehicle apparently lost braking control and passed and sideswiped a pickup truck as it descended the steep three-mile grade. It continued eastbound and entered the city limits of Frostburg at a high rate of speed striking eight vehicles and pushing these vehicles into six additional vehicles. The combination vehicle continued eastbound through the crowded downtown business district and finally veered to the right into a three story commercial building after several consecutive vehicular impacts.

"The force of impact drove the tractor and a previously struck vehicle inside the building causing the floor and right front corner to collapse. An explosion and fire erupted immediately. Three persons were fatally injured and twelve other vehicle occupants sustained injuries of varying degrees. No pedestrians were reported injured."

The rig was leased to Direct Transit Lines, Inc., and was being operated by one of Direct's employees at the time of the accident.

Under the terms of the lease, plaintiff was responsible for maintaining the vehicle and the Maryland indictment was based on the assertion the plaintiff had "intentionally and knowingly" adopted and enforced a policy of poor maintenance which contributed to the accident.

The prosecuting authorities claim this brought him in violation of the statute which reads as follows:

"Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, motor boat, locomotive, engine, car, street car, train or other vehicle in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile, motor vehicle, motor boat, locomotive, engine, car, street car, train or other vehicle,' and the person so convicted shall be sentenced

to jail or in the house of correction for not more than three years, or be fined not more than $1,000.00 or be both fined and imprisoned." MD Code, art 27, § 388.

Inasmuch as it is not claimed that plaintiff's acts were performed in Maryland, in effect Maryland charges that plaintiff's "grossly negligent" acts in Michigan caused the deaths in Maryland in violation of the statute.

The statute under which the warrant was issued provides:

"Sec. 3a. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom, and the requirements contained in subdivision (d) and (e) of section 3 of this act shall not apply to such cases." MCL 780.3a; MSA 28.1285(3-1/2).

The Newaygo Circuit Court granted plaintiff's petition for habeas corpus, finding that the charging papers did not have the effect of charging the plaintiff with having committed an act in Michigan intentionally resulting in the crime with which he is charged in Maryland as required by the statute.

The Court of Appeals reversed, *Deur v Newaygo County Sheriff*, 125 Mich App 642; 336 NW2d 852 (1983), holding that under the statute there need not be an intention that a crime result in the demanding state, but rather only that the act committed in the asylum state be intentional and subsequently result in a crime in the demanding

state. In arriving at this conclusion, the Court of Appeals stated:

"The crucial language, therefore, is that portion of § 3a which requires that the accused be charged with 'committing an act in this state * * * intentionally resulting in a crime in the state whose executive authority is making the demand.' The adverb 'intentionally' does not, grammatically or phraseologically, modify the noun 'crime' but the participial phrase 'committing an act.' To construe the statute otherwise would raise ignorance of the law to the level of a complete defense, and would also mean that deliberate acts not intended to have criminal consequences would carry with them no criminal responsibility." *Id.,* p 647.

We do not agree with the Court of Appeals interpretation of MCL 780.3a; MSA 28.1285(3-1/2). We cannot accept the grammatical construction used to find the word "intentionally" modifying the phrase "committing an act." A general rule of statutory construction is that "[w]ords or phrases shall be read in context and construed according to the rule of grammar and common usage." Uniform Statutory Construction Act, 1965, § 2; McCaffrey, Statutory Construction, § 21; Crawford, Construction of Statutes, § 196; 2A Sands, Sutherland Statutory Construction (4th ed), § 47.01, text and commentary. The rules of grammar and common usage would require the adverb "intentionally" to modify the word or phrase it precedes and not the word or phrase that comes before it. Follett, Modern American Usage (New York: Hill and Wang, 1966), p 54; Fowler, Modern English Usage (New York: Oxford University Press, 1965), position of adverbs, p 462. If "intentionally" was intended to modify the phrase "committing an act," the statute should have read "any person in this state charged in such other state in the man-

ner provided in section 3 with [intentionally] committing an act in this state, or in a third state, resulting in a crime in the state whose executive authority is making the demand * * *."

We hold that the non-fugitive extradition provision of the Uniform Criminal Extradition Act requires the accused to have committed an act in the asylum state coupled with an intent that such act result in a crime in the demanding state.

This requirement is consonant with the general rule that no state or nation can, by its laws, directly affect, bind or operate upon property or persons beyond its territorial jurisdiction, *Sexton v Ryder Truck Rental, Inc,* 413 Mich 406; 320 NW2d 843 (1982), citing 73 Am Jur 2d, Statutes, § 359, p 492. While *Sexton* dealt with a civil tort action, we applied the same rule in *People v Devine,* 185 Mich 50; 151 NW 646 (1915), where the accused was charged with polygamy.

Maryland, through the use of the non-fugitive extradition provision of the Uniform Criminal Extradition Act, here seeks to give extraterritorial effect to a penal statute seeking to regulate unintentional conduct. This issue was covered by Justice Holmes in *Strassheim v Daily,* 221 US 280; 31 S Ct 558; 55 L Ed 735 (1911). In *Strassheim,* the accused had been indicted in Michigan for bribery and also for obtaining money from the state by false pretenses. The accused, Daily, did not act in Michigan relating to the charged crimes. In reversing an order on habeas corpus discharging Daily, Justice Holmes, writing for the Court, stated, pp 284-285:

"If a jury should believe the evidence and find that Daily did the acts that led Armstrong to betray his trust, deceived the Board of Control, and induced by fraud the payment by the State, the usage of the civilized world would warrant Michigan in punishing him, al-

though he never had set foot in the State until *after* the fraud was complete. *Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power."* (Emphasis added.)

In effect, in *Strassheim,* Michigan was allowed to apply its penal laws extraterritorially because, while not being present in Michigan, the accused was found to have committed acts outside of Michigan intending them to have a detrimental effect in Michigan.

*Strassheim* was decided in 1911. The Uniform Criminal Extradition Act was drafted in 1926. The language used by Justice Holmes in *Strassheim* and the language used in the non-fugitive extradition provision of the Uniform Criminal Extradition Act are similar. The timing and similarity in language convince us of the intent by the Uniform Act drafters to adopt the *Strassheim* reasoning. The Report of the Committee on a Uniform Act for the Extradition of Persons Charged With Crime, Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings (1926), pp 585, 587, we think implicitly acknowledged an intent requirement for non-fugitive extradition. The committee, in explaining the inclusion of § 6 on non-fugitive extradition, stated:

"On the same theory [comity] we have included a provision as section 6 of this draft, authorizing the extradition of persons who may have never fled from justice at all, but who have committed homicide across the border of a state by shooting or other means coming within the common judicial conclusion that the crime is committed at the place where the person is killed."

The use of homicide in explaining the non-fugi-

tive extradition provision we are persuaded indicated that the committee envisioned non-fugitive extradition only for intentional crimes. This would be consistent with the language and reasoning of *Strassheim.*

The Michigan Legislature adopted the Uniform Criminal Extradition Act in 1937. The pertinent language of § 6 of the act was adopted without change and appears in MCL 780.3a; MSA 28.1285(3-1/2). Thus, our statute pertaining to non-fugitive extradition, MCL 780.3a; MSA 28.1285(3-1/2), we are satisfied, requires an accused to have intended that an act in the asylum state result in a crime in the demanding state.

The Court of Appeals stated that to require an intention that a crime result would allow deliberate acts to carry no criminal responsibility. We disagree. Intent can be inferred from a defendant's deliberate acts. But a crime based on negligence can never meet the requirement of this statute.

In addition to the grammatical reading of the statutory language and the legislative history indicating an intent to include a requirement that the accused intend that a crime result in the demanding state, there are other reasons for such a requirement. First, the accused has the right under our system of criminal justice to know what acts are proscribed and what conduct on his part shall subject him to criminal jeopardy. Also, the asylum state has a legitimate interest in exposing and learning of those acts taking place within its jurisdiction with the intent that a crime be committed in a sister state.

While we have held that the asylum state has no power to inquire into the guilt or innocence of the person whose extradition is demanded, *In re Doran,* 401 Mich 235; 258 NW2d 406 (1977), *rev'd on other grounds* 439 US 282 (1978), there

is an obligation to make certain that the requirement be met that the extradition statute be satisfied before permitting one to be surrendered to the executive authority of another state. In this case, it is apparent from the facts that Mr. Deur did not commit any act in the State of Michigan intentionally resulting in the crime with which he is charged in the State of Maryland. The requirements for a valid extradition under that statute not having been met, we vacate the Court of Appeals order discharging the writ of habeas corpus. The writ is reinstated.

WILLIAMS, C.J., and LEVIN and CAVANAGH, JJ., concurred with KAVANAGH, J.

BRICKLEY, J. *(concurring).* I fully agree with Justice KAVANAGH's conclusion that MCL 780.3a; MSA 28.1285(3-1/2) requires that the act committed by the accused in the asylum state must have been done with the intent that the crime result in the requesting state.

In the case at bar, the Maryland request for extradition is based largely on the affidavit of Maryland Police Officer Donald Maiers. Officer Maiers concluded his affidavit as follows:

"Your affiant believes, based on his personal observations, interviews conducted, and information received, [that] Marvin Robert Deur had intentionally and knowingly adopted and enforced a policy of poor maintenance of the vehicle leased to Direct Transit, Inc., and other vehicles similarly leased. These activities of Deur directly contributed to the incident which resulted in the death of three persons in Frostburg, Maryland, on February 18, 1981."

Notwithstanding these broad allegations, there is nothing in the affidavit or any other of the

requesting papers which indicates that plaintiff committed an act in Michigan which he intended to result in a crime in Maryland. Regardless of plaintiff's allegedly poor maintenance practices in Michigan, the extradition request and accompanying documents do nothing to establish that these practices were carried out with the intent that a crime result in Maryland. The question is not whether plaintiff intentionally used poor maintenance in Michigan, but whether he intended his actions to result in a crime in Maryland.

Thus, absent adequate allegations in the extradition papers,[1] plaintiff is entitled to habeas corpus relief.

Even though the extradition request is currently invalid, I cannot agree with my brother's conclusion that "it is apparent from the facts that Mr. Deur did not commit any act in the State of Michigan intentionally resulting in the crime with which he is charged in the State of Maryland." Because the extradition request is facially invalid I would avoid any inquiry into whether Deur actually committed acts in Michigan which were intended to result in a crime in Maryland. Such an inquiry in this case inevitably results in an examination of the evidence unnecessary to our holding at this time.

---

[1] We note that the extradition request from the Governor of Maryland stated:

"that Marvin Robert Deur under the Laws of this State stands charged with the crime of manslaughter by motor vehicle which I certify to be a crime under the Laws of this State, by intentionally committing an act in the State of Michigan resulting in said crime in this State."

On the other hand, Lawrence V. Kelly, State Attorney for Allegheny County, Maryland, in his application for requisition addressed to his Governor alleged that the plaintiff

"committed an act or acts on or about the 1st day of May, 1980, thru [sic] the 18th day of February, 1981, in the State of Michigan which intentionally resulted in commission of said crime in the said County of this State."

I further note that it is unnecessary to address plaintiff's argument that the rule announced in *In re Doran,* 401 Mich 235; 258 NW2d 406 (1977), reversed in *Michigan v Doran,* 439 US 282; 99 S Ct 530; 58 L Ed 2d 521 (1978), is still viable in Michigan in non-fugitive extradition cases. This Court in *Doran* based its conclusion on constitutional principles, and it is well settled that this Court will decline to answer federal constitutional issues if state statutory relief is available.

I would hold that the extradition papers are inadequate under MCL 780.3a; MSA 28.1285(3-1/2) and save all other questions for another day.

RYAN, J. I dissent.

My examination of the extradition documents satisfies me that the requisite jurisdictional fact in question, that the plaintiff is alleged to have performed acts in Michigan "intentionally resulting in a crime" in Maryland, is adequately alleged. That allegation appears explicitly in the Maryland state's attorney's application for requisition and in the Michigan Governor's warrant. The absence of that explicit assertion in the Maryland Governor's extradition request, and in the affidavit of the Maryland state police officer, is not, in light of the foregoing, jurisdictionally fatal to the Michigan Governor's unreviewable discretionary decision to order the plaintiff's extradition.

BOYLE, J., concurred with RYAN, J.