64 514
65 565
64 514
66 265
66 289
64 514
69 113
64 514
74 98
64 514
85 396
64 514
95 225
64 514
105 571
64 514
115 478
64 514
119 586
64 514
d126 80
64 514
127 18
127 91
127 675
64 514
s38NW 581
129 ⁴555

## MAUD BATTISHILL v. SOLON HUMPHREYS ET AL., RECEIVERS OF THE WABASH, ST. LOUIS & PACIFIC RAILWAY COMPANY.

[See 64 Mich. 494.]

*Negligence—Failure to give signals at railroad crossing—Practice in circuit courts—Conduct of counsel—Improper references to former trial—Argument.*

1. Where the testimony is conflicting whether the required signals were given by those in charge of a railway train on approaching a city crossing, the question is properly submitted to the jury.

2. It is improper for counsel engaged in a *second* trial of a cause to state, in the presence and hearing of the jury, what occurred upon the former trial; and where the Court can see that remarks so made were likely to influence or prejudice the jury, the judgment will be reversed for that cause.

3. It is competent to interrogate a witness as to testimony given by him upon a former trial, for the purpose of refreshing his recollection or impeaching him.

4. Extravagant expressions are apt to be used by counsel in the heat of an argument. Invective is sometimes resorted to, persuasions used, and forensic skill employed,—all with the design to influence the jury in behalf of a client. But all these arts and appliances are permissible so long as confined within the legitimate bounds of the discussion of the facts; and if courts are to take it upon themselves to set aside verdicts because some irrelevant remarks are thus made use of by counsel, they will find constant employment, and few indeed will be the verdicts which will be sustained.[1]

5. Where, on the trial of a suit for negligent injury to a child by a railway company, three persons on the train testified that it was their duty to keep a lookout, and two of them testified that they occupied positions where they could have seen the child had it been upon the track, and that they did not see it, and three witnesses swear that they saw the child upon the track, and the train approaching several hundred feet away, and the child is run over in the broad light of a summer afternoon,—

[1] See *Mayo v. Wright*, 63 Mich. 32 (head-note 1) as to proper method of securing correction of erroneous statements of counsel.

*Held, conclusive* proof of *reckless* negligence on the part of the railway company in running the train without a proper lookout.

6. In such a case, where the defendant is shown to have been guilty of reckless negligence resulting in the injury complained of, the question of the contributory negligence of the plaintiff does not arise.

Error to Wayne.     (Look, J.)     Argued May 22, 1888. Decided June 8, 1888.

Action on the case for negligence.  Defendants bring error. Affirmed.   The facts are stated in the opinion.

*Alfred Russell*, for appellants.

*Griffin & Warner*, for plaintiff.

CHAMPLIN, J.  This is a suit for personal injuries to a little girl two years and seven months old.   The child's parents lived on Ferdinand avenue, in Detroit, a street which crossed the track of the Wabash, St. Louis & Pacific Railway Company at right angles at about 150 feet distant from the house.

The case was before us at the January term, 1887, (*ante,* 494), and we refer to the report of the case for a map showing the location of the place of the accident and the surroundings.

It appears from the testimony that plaintiff was injured on the afternoon of a July day in 1884.   Her father was a street-car driver, and was absent from home at the time, attending to his daily avocation.   His family consisted of his wife and two children, and his wife's father, then about 80 years old.   The younger child was then a baby.   His wife attended the family, and did the marketing.   Mrs. Battishill, the plaintiff's mother, testified that, on the day of the accident, she went up to the city to buy groceries, and see her sister, who was sick; that she took the street car at half past 2, leaving the plaintiff at home in the care of her father,

who was 81 years old and in ordinary health. She left her younger child at home asleep. Her father was lying down when she left the house, but said he would get right up when she left the little girl with him. She did not take the plaintiff with her up town to get the groceries, because she could not carry her basket with the child. She knew the railroad was close by, but she never knew the child to go near it before. She had been in the habit of going away and buying groceries, and leaving the child.

She reached home between 4 and 5 o'clock, and found her child had been injured, and the doctors there. The child's leg had been crushed between the foot and knee, and the surgeons amputated the limb between the knee and hip. In some manner not explained the child had gone upon the track of the railroad operated by defendants as receivers, and was injured at or near the point where Summit avenue crosses the railroad track.

George Lewis testifies to having witnessed the accident; and he says that plaintiff, when he first saw her, was on the track going across a culvert towards home. She was pretty near the middle of the culvert. He saw the train coming, and ran down, and tried to catch her off. She was walking across the culvert, with her feet on both sides of the rail. He tried to pull her off, but her stocking caught, so that he could not, and the train ran over her leg.

There is a clear view of the track west from Summit avenue for two or three miles, and also from that point east to Clark avenue. The train of cars which did the injury was composed of an engine and tender, and four or five freight cars. The engine and tender were running backwards, drawing after them the freight cars. The train was properly manned with an engineer, fireman, conductor, and one brakeman. The engineer and fireman were at their proper stations, and the brakeman was upon the top of the car at the west, and the conductor on the top of the east car. The

train was going east. All of these who were sworn—and they were all sworn except the fireman, who was absent from the State—testified that they were keeping a proper lookout, and none of them saw the child upon the track, or were aware of the accident until after they were informed of it upon their return to Delray. The distance from Summit to Clark avenue is 320 feet.

John Levison was loading cinders on a car which stood on a side track five car-lengths west from Clark avenue. He saw the child on the track on the crossing at the culvert, and the train, at the time, was at John C. street, which is 492 feet west from Summit avenue. It was coming towards him at the rate of about three miles an hour. He looked away when the train got close to the child. He then, with Mr. Brandt and Mr. Ridgedale, went and picked up the child. They found her 10 or 12 feet from the cattle-guard at the crossing, inside, in the middle of the track between the rails. The train was going towards the city, and did not stop. They took the child to her father's house. He testified that there is a straight track to the west to Delray, which is about two miles and a half, and there was no obstruction to the view.

Frederick Brandt testified that he was with Levison, loading cinders into the car. He first saw the train at Junction avenue. This, by measurements testified to by Mr. Battishill, would be a distance of 738 feet west from Ferdinand street. He says that he saw the child upon the track before she was run over. She was on Summit avenue, on the track; and he saw the train come up, and run over her. It was running faster than he could walk,—say five miles an hour. The train went on to the city without stopping. As soon as he saw that the child had been run over, he and his two companions ran to her, and found she had a leg off, and they picked her up and carried her home.

There was testimony introduced which tended to show that

those in charge of the engine failed and neglected to give the required and usual signals of alarm upon approaching the Summit-avenue crossing; and on the other side the testimony was positive that such signals of alarm were given.   On this point the question was properly submitted to the jury.

Several of the errors assigned relate to the method pursued by the plaintiff's counsel in conducting the trial.

It is improper for counsel engaged in a second trial of a cause to state, in the presence and hearing of the jury, what occurred upon the former trial; and where the Court can see that the remarks were likely to influence or prejudice the jury, the judgment will be reversed for that cause.   It is competent, however, to interrogate a witness as to testimony given by him upon a former trial, for the purpose of refreshing his recollection, or of impeaching him.   I do not think the first exception taken well grounded.

The fourth exception was taken to the remarks of counsel for plaintiff while addressing the jury, and the objectionable remarks stated by counsel for defendants were excluded by the court on exception being taken, as were also the remarks which were the subject of the sixth exception.

The seventh, eighth, ninth, and tenth exceptions purport to be based also upon the remarks of counsel in his argument to the jury.   The record does not show the remarks made, or the connection in which they were made; but, in taking the exception, the counsel embodies certain expressions as having been made by the counsel for plaintiff.   As some of these were disputed by counsel at the time, we cannot assume that he was correctly quoted in the exception.   Others not disputed may be assumed to have been made.   In some instances, when exceptions were taken, the court corrected counsel for plaintiff at the time; and, with respect to the eighth, he took occasion to correct him in his charge to the jury, as requested by counsel for defendants.

Upon the whole matter of the exceptions to the remarks

of counsel, while we do not approve, yet we cannot say that they were likely to or did mislead or prejudice the jury against defendants.    Extravagant expressions are apt to be used in the heat of argument.    Invective is sometimes resorted to, persuasions made, and forensic skill employed,— all with the design to influence the jury in behalf of a client. But all these arts and appliances are permissible so long as confined within legitimate bounds of the discussion of the facts before the jury; and if courts are to take it upon themselves to set aside verdicts because some irrelevant remarks are made use of by counsel in their arguments, they will find constant employment, and few indeed will be the verdicts which will be sustained.

The twenty-first assignment of error is based upon the refusal of the court to instruct the jury that there was no evidence to support the third count of the declaration.    That count averred that it was the duty of the defendants to use and exercise proper care and precaution in the running of their trains, and to employ competent and careful lookouts, agents, and servants, who should be stationed on or about the locomotive engines of their trains, who should be attentive to their duties, and, in case of apprehended danger, who should arrest the engines of their said trains, and stop the same in time to avert danger and accident, and to otherwise exercise proper care and precaution in giving the signals of warning required by the statute in such cases made and provided; yet the defendants, neglecting their duty in that behalf, neglected to exercise such reasonable care and precaution aforesaid, and recklessly, wantonly, and maliciously ran and propelled one of their trains over the said plaintiff, who was then an infant about three years of age, without stopping the train in time to avoid the accident and injury to the plaintiff, when the said train, by the exercise of proper care and precaution upon the part of defendants, and without recklessness and wantonness on their part, might have been.

arrested and stopped. It also averred that the plaintiff was in the exercise of due care upon her part.

The learned counsel for the defendants insists that there was not a particle of testimony to support this count, because the engineer, the conductor, and the brakeman in charge of the train all and each testified that they were upon the lookout, and did not see the child. We do not think the conclusion follows from the testimony in the case. At least three persons testified to seeing this little girl upon the track when she was run over. The place where the accident happened was in the township of Springwells, then a suburb of the city of Detroit, and now included within the city limits.

It would have been reckless negligence for persons employed by defendants to have started this train at the junction, and left it to proceed into the city without any one on board and having control thereof. It would likewise have been reckless for such train to have been run without any person to look out for accident or danger to individuals upon the track or upon the street crossings, which were numerous in that locality. It would be no less reckless for such train to be run while the person charged with the duty of keeping a lookout to avoid danger or accident neglected such duty. What is the inevitable conclusion from the testimony? When three persons on the train testify that it was their duty to keep a lookout, and two of them testify that they occupied positions where they could have seen the child had it been upon the track, and swear they did not see it, and three witnesses swear they saw the child upon the track, and the train approaching several hundred feet away, and the child is run over in the broad light of a summer afternoon, were the persons in charge of that train performing their duty of keeping a lookout or not? If they were, they would have seen the child in time to stop the train and avoid the accident. If they had seen it upon the track the same distance from it that Levison and Brandt saw it, they could have

stopped the train, and avoided the injury to plaintiff. That they did not see it under the circumstances is conclusive proof that they did not keep a proper lookout. As well might the train have been run with no one in charge. It would have been no more reckless and more culpable than, with four men in charge, to run over this child, who was upon the track in plain sight, without seeing it. It shows in these men a reckless indifference to their duty under the situation and surroundings. The law does not require impossibilities, but it does require care on the part of persons in charge of such dangerous machinery and force. What others saw in looking along the track, these employés could have seen; and that they did not observe the child under the circumstances shows them guilty of reckless negligence.

The defendants being guilty of reckless negligence under the circumstances disclosed by the testimony in running their train without keeping a proper lookout, and in consequence thereof having run over plaintiff, and injured her, the question of contributory negligence does not arise, even had the plaintiff been of that age at which the law would have imposed upon her the duty of exercising due care to avoid injury. Having reached this conclusion, it would be unprofitable to discuss the subject of imputed negligence, as the disposition of the case does not depend upon that question.

The judgment is affirmed.

SHERWOOD, C. J., and MORSE, J., concurred.

CAMPBELL, J. I concur in the conclusion that the case presented by the testimony was such that the jury had a right to find as they did, and that there was no legal error in the rulings. I concur, therefore, in the affirmance.

LONG, J., did not sit.