BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN
*v.* AUDITOR GENERAL.

1. STATUTES—CONSTRUCTION—CONFLICTING CLAUSES.

In passing upon statutory provisions which are obscure or conflicting, the practical construction which State officials with a duty to perform thereunder have during a long period followed, and which has been acquiesced in by all parties in interest, is entitled to weight and has been favored by the courts when not manifestly in conflict with the intent and spirit of the act.

2. SAME.

It is an elementary rule of construction that all words found in the act are presumed to be used for some purpose, and, so far as possible, effect must be given to every clause and sentence.

3. SAME.

The proper function of a proviso is to restrain or in some manner modify the general provisions of an enacting clause: it is not to be extended or enlarged by inference but is to be strictly construed and limited to the object plainly within its terms.

4. SAME—CONSTITUTIONAL LAW—SCHOOLS AND COLLEGES.

Under the provisions of the Constitution of 1909, art. 11, § 5, the board of regents of the State University has independent control of the affairs of the University (Constitution of 1850, art. 13, § 8).

5. COLLEGES AND UNIVERSITIES — BOARD OF REGENTS — CORPORATIONS—STATUTES—CONDITIONAL APPROPRIATIONS.

Conditions may be attached to appropriations for the University by the legislature, and the board of regents may accept or reject the appropriations in their discretion.

6. SAME.

Act No. 102, Pub. Acts 1899, providing a one-fourth mill tax for the maintenance of the State University, to be paid to the board of regents when collected in the same manner as interest on the University fund, containing the proviso that the State treasurer pay the regents upon the warrant of the auditor general the amount of the tax, in the manner pro-

vided by law, was not intended by the legislature to change the settled policy of the State and to subject the constitutional control of the board of regents to the judgment of the auditor general; nor was it intended to engraft upon the appropriation all the conditions and restrictions of the accounting laws under which the auditor general is required to audit expenditures *for lawful purposes.*

7. SAME—MANDAMUS.

The auditor general will be compelled by the writ of mandamus to perform the ministerial duty devolving upon him under said act, and to approve and issue warrants upon the State treasurer to pay for the expenditure of moneys authorized by the board of regents for the purpose of enabling the president of the University to attend alumni meetings, inaugurations, etc., and other like University purposes.

Mandamus proceedings by the board of regents of the University of Michigan against James B. Bradley, auditor general of the State of Michigan, to compel the issuance of a warrant upon the treasurer for certain expenditures and disbursements. Submitted October 4, 1911. (Calendar No. 21,703.) Writ granted November 3, 1911.

*Henry M. Campbell,* for relator.

*John E. Bird,* Attorney General, *Franz C. Kuhn,* Attorney General, *Henry E. Chase,* Deputy Attorney General, and *Thomas A. Lawler,* Assistant Attorney General, for respondent.

STEERE, J.   In this proceeding the court is asked to decide whether the judgment of the auditor general or that of the board of regents shall prevail respecting the expenditure of moneys appropriated for the use and maintenance of the University by Act No. 102, Pub. Acts 1899.   On April 30, 1906, the treasurer of the University made requisition upon the respondent for monthly expenditures from the appropriation of the so-called quarter-mill tax, amounting to $39,452.50, for the payment of current expenses.   In making this requisition he followed the usual practice, which was in harmony with the methods prescribed by the accounting laws.   The auditor general

refused to draw his warrant upon the State treasurer for the amount of such requisition, for the reason that certain vouchers made by the regents for prior expenditures, which in his opinion were unlawful, had not been audited and allowed by him. These prior expenditures, amounting to $557.54, were for traveling expenses of Dr. Angell, president of the University, in attending alumni meetings and inaugurations of presidents of other universities, and for traveling expenses of other members of the faculty and officers, acting under the authority of the president and regents, in attending intercollegiate meetings and conferences as delegates or representatives of the University, and for the expenses of instructors in accompanying students in inspecting mechanical engineering plants, the same being a part of the prescribed course for certain engineering students. It was the opinion of the auditor general that such expenditures were not for the use and maintenance of the University, as contemplated by Act No. 102, Pub. Acts 1899, and consequently not for *lawful purposes* under the accounting laws of this State. The petitioner claims it has exclusive direction and control of all University expenditures, and asks for a writ of mandamus to compel respondent to draw his warrant on the State treasurer for the amount of the requisition above mentioned.

On behalf of the respondent it is urged that the writ should be denied for the following reasons :

"*First.* Because the quarter-mill tax appropriation must be dispersed in accordance with the accounting and appropriation laws of this State, and in refusing to comply with the conditions therein expressed the board of regents has violated the conditions upon which the appropriation was made.

"*Second.* Because it is the judgment of the auditor general, whose determination is final and conclusive, that the disbursements represented by the vouchers in question are for unlawful purposes.

"*Third.* Because the auditor general is prohibited by law from drawing his warrant upon the State treasurer

for future requisitions until the amounts represented by the vouchers in question are returned to the institution treasury."

The moneys available for support and maintenance of the University consist of, *first*, interest on the University fund so called, being a fund derived from the sale of lands donated by the general government; *second*, fees received from students; *third*, appropriations made from time to time by the legislature of the State.

The funds in question are of the latter class, being appropriated by Act No. 102, Pub. Acts 1899, providing for a tax of one-quarter mill upon the taxable property of the State. This act, which is an amendment of a former act of similar import, consists of but one section, and reads as follows:

"SECTION 1. There shall be assessed upon the taxable property of the State as fixed by the State board of equalization, in the year 1899 and in each year thereafter, for the *use* and *maintenance* of the University of Michigan, the sum of one-fourth of a mill on each dollar of said taxable property to be assessed and paid into the State treasury of the State in like manner as other State taxes are by law levied, assessed and paid; which tax, when collected, shall be paid by the State treasurer to the board of regents of the University *in like manner as the interest on the university fund* is paid to the treasurer of said board; and the regents of the University shall make an annual report to the governor of the State of all the receipts and expenditures of the University: *Provided*, that the board of regents shall not authorize the building or the commencement of any additional building or buildings or other extraordinary repairs until the accumulation of savings from this fund shall be sufficient to complete such building or other extraordinary expense. *Also provided*, that the board of regents of the University shall maintain at all times a sufficient corps of instructors in all the departments of said University as at present constituted, shall afford proper means and facilities for instruction and graduation in each department of said University, and shall make a fair and equitable division of the funds provided for the support of the University in accord with the wants and needs of said departments as they shall become

apparent; said departments being known as the departments of literature, science and art, department of medicine and surgery, department of law, school of pharmacy, homeopathic medical college and the department of dental surgery. Should the board of regents fail to maintain any of said departments herein provided, then at such time shall only one-twentieth of a mill be so assessed: *Provided, further,* that the State treasurer be and is hereby authorized and *directed to pay* to the regents of the University, in the year 1899 and each year thereafter, in such manner as is now provided by law, upon the warrant of the auditor general, the amount of the mill tax provided for by this act; and that the State treasury be reimbursed out of the taxes annually received from said mill tax when collected; and said auditor general shall issue his warrants therefor as in the case of special appropriations."

Manifestly there cannot be a strict compliance with the two somewhat contradictory provisions as to time and manner of payment. In the enacting clause of the statute under consideration, the legislature provides for a quarter-mill tax, appropriates it to the use and maintenance of the University, and specifies that, *when collected,* it shall be paid to the regents in like manner as interest on the University fund is paid. It further requires that the regents shall annually make report of receipts and expenditures to the governor. Following this, in separate provisos, are two distinct conditions as to expenditure of this appropriation. *First,* it prohibits the use of savings, accumulated from the appropriation, for any new buildings or extraordinary repairs or expenses until such accumulations are sufficient to complete the same; *second,* the departments of the University are to be maintained in a certain manner, and by a final proviso the State treasurer is directed to each year *advance* from the State treasury the amount of the mill tax provided by the act, to be reimbursed from said tax when collected, and he is to pay the same "in such manner as is now provided by law." The respondent and his predecessors have construed this proviso as requiring payments to be made under the general accounting

laws of the State, and have followed the procedure there pointed out, which course has been acquiesced in by the regents until this controversy arose over the authority of the auditor general to reject vouchers for expenditures authorized by the board when in his judgment they were not for lawful purposes.

He claims such authority under sections 3 and 5 of the accounting laws, being sections 1207 and 1209, 1 Comp. Laws; the material portions reading as follows:

"SEC. 3. Such account current, abstract, vouchers, and receipts, when received by the auditor general, shall be examined by him, and if found correct shall be so endorsed by him; and all vouchers for expenditures, so far as the amount thereof shall appear to be for lawful purposes, he shall audit. *   *   *

"SEC. 5. Money appropriated by any act of the legislature for the use or benefit of any State educational, charitable, reformatory or penal institution, or to be disbursed by any officer, may be drawn from the State treasury upon the warrant of the auditor general, as follows, viz.: Under appropriations for current expenses monthly for *pro rata* amounts: *   *   *   *Provided*, that when appropriations are made for current expenses, or general purposes, where no itemized estimates were furnished as a basis therefor, then the class of disbursements shall be determined by the officer, or board of the institution making them, and if the same shall appear to the auditor general to be within the range of reasonable purposes he shall approve the account.   *   *   *   "

In passing upon statutory provisions which are obscure or conflicting, the practical construction which State officials, with a duty to perform thereunder, have, during a long period adopted and followed with reference to their meaning, and which has been acquiesced in by all parties in interest, is entitled to weight, and has been favored by the courts when not manifestly in conflict with the intent and spirit of the act. In harmony with that rule of construction, we are disposed to accept the interpretation of the law adopted and acted upon by respondent and relator as to the time and manner of payment; but, in the light

167 MICH.—29.

of constitutional provisions, legislation, and decisions of this court touching the authority of the board of regents to control the affairs of the University, cannot hold that the judgment of the regents as to the legality and expediency of expenditures for the use and maintenance of the institution is subordinate to that of the auditor general.

The leading thought and clearly expressed object of the final proviso under consideration is the advancement during each year of this appropriation from the State treasury for current expenses, to be later replaced when the tax is collected. To that extent it clearly modifies the enacting clause, but words found in the body of the act, following the phraseology of previous acts of like nature, paralleling the appropriations made, with the University interest fund, have a significant bearing on the intent of the legislature. It is an elementary rule of construction that all words found in the act are presumed to be made use of for some purpose, and, so far as possible, effect must be given to every clause and sentence.

The proper function of a proviso is to restrain, or in some manner modify, the general provisions of an enacting clause. It is not to be extended or enlarged by inference, but strictly construed and limited to the object plainly within its terms.

By the provisions of the Constitution of 1850, repeated in the new Constitution of 1909, the board of regents is made the highest form of juristic person known to the law, a constitutional corporation of independent authority, which, within the scope of its functions, is co-ordinate with and equal to that of the legislature. By the old Constitution it is given "direction and control of all expenditures from the University interest fund" (section 8, art. 13); and by the new Constitution "general supervision of the University, and the direction and control of all expenditures from the University funds." Section 5, art. 11. That the board of regents has independent control of the affairs of the University by authority of these constitutional provisions is well settled by former decisions

of this court. *People* v. *Regents,* 4 Mich. 98; *Weinberg* v. *Regents,* 97 Mich. 254 (56 N. W. 605); *Sterling* v. *Regents,* 110 Mich. 382 (68 N. W. 253, 34 L. R. A. 150); *Bauer* v. *State Board of Agriculture,* 164 Mich. 415 (129 N. W. 713). Strong and unequivocal language is used in these decisions.

"The respondents are constitutional officers to whom are confided by the Constitution 'the general supervision of the University, and the direction and control of all expenditures from the University interest fund.' * * * To their judgment and discretion as a body is committed the supervision of the financial and all other interests of an institution in which all the people of this State have a very great interest." *People* v. *Regents, supra.*

"But the general supervision of the University is by Constitution vested in the regents. * * * So, when the State appropriates money to the University it passes to the regents and becomes the property of the University, to be expended under the exclusive direction of the regents, and passes beyond the control of the State through its legislative department. * * * Under the Constitution, the State cannot control the action of the regents. * * * It cannot add to or take away from its property without the consent of the regents. In making appropriations for its support the legislature may attach any conditions it may deem expedient and wise, and the regents cannot receive the appropriation without complying with the conditions. This has been done in several instances." *Weinberg* v. *Regents, supra.*

The able and exhaustive opinion by Justice GRANT in *Sterling* v. *Regents, supra,* reviews the causes which led up to these former decisions and reaffirms them. In the recent case of *Bauer* v. *State Board of Agriculture, supra,* the *Sterling Case* is cited with approval.

That conditions may be attached by the legislature to appropriations for the University is well settled. In such case the regents may accept or reject such appropriation, as they see fit. If they accept, the conditions are binding upon them. In this act appropriating the quarter-mill tax, now three-eighths of a mill (Act No. 303, Pub. Acts 1907), are specific conditions as to reporting to the gov-

ernor, maintaining the departments, and use of accumulations. With these the regents must comply. For a failure to maintain any of said departments the penalty is a reduction of the tax to one-twentieth of a mill, but beyond that the money passes to the regents, and becomes the property of the University, to be expended under the exclusive direction of the regents.

We cannot construe the language of the final proviso of the act in question as an intent on the part of the legislature to overthrow the public policy of over half a century, plainly deducible from the general course of legislation and adjudication relating thereto, or as a purpose on their part to refuse aid to the University, unless the regents surrender their constitutional right to control the affairs and finances of the institution, and submit their judgment as to the wisdom and expediency of detailed expenditures for current expenses to that of the auditor general. Neither in construing this proviso can we interpret it as an intent thus by indirection to enlarge the scope of the enacting clause and ingraft upon this appropriation all conditions and restrictions found in the accounting laws of the State, together with any legislation which may be read in connection therewith.

No money is paid out of the State treasury except on the warrant of the auditor general. In this case, as in many others, his duties are purely ministerial. As against the discretion of the regents in expenditure of the University funds he exercises no judicial functions. As to him, in the performance of his official duties, vouchers for expenditures made within the amount of the appropriation, when authorized by the board of regents and properly authenticated by the duly constituted officials, are, within the meaning of the law, "for lawful purposes."

A writ of mandamus will issue as prayed.

OSTRANDER, C. J., and MOORE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred. BIRD, J., did not sit.