DEDES v ASCH

Docket Nos. 96420, 96421. Argued March 8, 1994 (Calendar No. 11). Decided August 2, 1994. Rehearing denied 447 Mich 1202.

Michael R. Dedes and Jeanne L. Dedes, as copersonal representatives of the estate of Adrian Dedes, deceased, and as next friends of Lauren L. Dedes, a minor, brought negligence actions in the Oakland Circuit Court against Jeanne Asch, Director of Transportation of the South Lyon Community Schools, and Joan Shifford, a school bus driver, for injuries sustained by the children while walking toward their bus stop when they were hit by a car. The plaintiffs alleged that the location of the bus stop was unsafe, that a safer route could have been designed, and that Shifford changed the location where the children were to wait for the bus. The court, Hilda R. Gage, J., granted summary disposition for Asch, ruling that, assuming arguendo, she was grossly negligent, she was not the sole proximate cause of the accident, and, regarding Shifford, ruled that her conduct was not the proximate cause of the accident. The Court of Appeals, CORRIGAN, P.J., and WEAVER, J. (CONNOR, J., dissenting), affirmed, holding that under the plain language of MCL 691.1407(2)(c); MSA 3.996(107)(2)(c) neither defendant's alleged negligence could have been the proximate cause of the children's injuries (Docket Nos. 132953, 135308). The plaintiffs appeal.

In an opinion by Justice BOYLE, joined by Chief Justice CAVANAGH, and Justices LEVIN and MALLETT, the Supreme Court *held:*

Use of the word "the" in the governmental immunity statute, MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), before the words "proximate cause" is not to be read to limit recovery in a case in which the conduct of a government employee constitutes gross negligence and the plaintiff or another person is also a

REFERENCES

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 61, 78; Negligence §§ 546, 571, 1191.

See ALR Index under Comparative Negligence; Governmental Immunity or Privilege.

cause of an accident; nor is it to be read to prevent a defendant from claiming comparative negligence as a defense.

1. While use of the word "the" before the words "proximate cause" in MCL 691.1407(2)(c); MSA 3.996(107)(2)(c) is ambiguous, it cannot be concluded that the Legislature intended to reestablish contributory negligence and eliminate recovery where more than one tortfeasor contributes to a plaintiff's injury. A plain-meaning analysis is incapable of providing clear guidance regarding the meaning of "the," and the legislative history of the statute provides no support for reestablishment of contributory negligence and in fact establishes that no importance was attached to "the" or "proximate cause."

2. When read in the context of the text of the statute, its purpose, background, and structure, the interpretive force of the literal language is less significant than the force of other factors. Because there is no evidence that the Legislature intended to dramatically rewrite Michigan's common-law causation principles when it used the word "the" between "gross negligence" and "proximate cause," a literal interpretation must be rejected.

Reversed and remanded.

Justice RILEY, joined by Justices BRICKLEY and GRIFFIN, dissenting, stated that interpretation of the phrase "the proximate cause" to mean "a proximate cause" is in clear derogation of its plain and obvious meaning. "The proximate cause" means the sole proximate cause, not merely any or a proximate cause. The language is plain, unambiguous, and not subject to different interpretations, leaving no room for judicial construction. As long as the Legislature did not violate the constitution, legislative controversies must be resolved by the various democratic safeguards and checks provided by the constitution.

199 Mich App 385; 502 NW2d 720 (1993) reversed.

GOVERNMENTAL IMMUNITY — PROXIMATE CAUSE — COMPARATIVE NEGLIGENCE.

Use of the word "the" in the governmental immunity statute before the words "proximate cause" is not to be read to limit recovery in a case in which the conduct of a government employee was substantially more than negligent and the plaintiff or another person is also a cause of an accident; nor is it to be read to prevent a defendant from claiming comparative negligence as a defense (MCL 691.1407[2][c]; MSA 3.996[107][2][c]).

*Lopatin, Miller, Freedman, Bluestone, Herskovic*

*& Heilmann* (by *Richard E. Shaw*) for the plaintiffs.

*Neal, Neal & Stewart, P.C.* (by *Warren A. Hampton*), for the defendants.

Amici Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Clive D. Gemmill,* Assistant in Charge, *Michael C. McDaniel,* Assistant Attorney General, for the Tort Defense Division.

*Clark, Klein & Beaumont* (by *Dennis G. Bonucchi* and *J. Walker Henry*) for Michigan Defense Trial Counsel, Inc.

*Johnson, Rosati, Galica, Shifman, Labarge, Aseltyne, Sugameli & Field, P.C.* (by *Christopher J. Johnson* and *Daniel P. Dalton*), for Metropolitan Association for Improved School Legislation Joint Risk Management Trust.

*O'Connor, DeGrazia & Tamm, P.C.* (by *James I. DeGrazia* and *Julie McCann-O'Connor*), for Michigan Municipal Liability and Property Pool and Public Corporation Law Section of the State Bar.

*Mika, Meyers, Beckett & Jones* (by *Steven L. Dykema* and *William A. Horn*), Co-Counsel for the Universities, *Dr. Eileen Jennings* for Central Michigan University, *Kenneth McKanders* for Eastern Michigan University, *W. Scott Szpara* for Ferris State University, *Mary Elizabeth Kurz* for Michigan State University, *Butzel, Long* (by *Robert M. Vercruysse*) for Michigan Technological University, *Miller, Canfield, Paddock* (by *Charles A. Duerr, Jr.*), for Northern Michigan University, *Currie & Kendall* (by *William C. Col-*

*lins)* for Saginaw Valley State University, *Elsa Kircher Cole* for University of Michigan, *Daniel J. Bernard* for Wayne State University, and *Keith A. Pretty* for Western Michigan University.

*Mark Granzotto, Monica Farris Linkner,* and *Jeffrey T. Myers* for Michigan Trial Lawyers Association.

BOYLE, J. Plaintiffs appeal the Court of Appeals affirmance of a summary judgment motion granted pursuant to MCR 2.116(C)(7), dismissing the plaintiffs' case for failure to state an actionable claim of gross negligence against defendants Jeanne Asch and Joan Shifford. We reverse and remand for further proceedings consistent with this opinion.

I

Adrian and Lauren Dedes lived on the north side of Ten Mile Road in South Lyon. They traveled to school in a bus driven by defendant, Joan Shifford, which followed a route designed by Jeanne Asch, Director of Transportation of South Lyon Community Schools. The Dedes children's bus stop was located on top of a hill near their driveway, where they were to wait until their bus arrived, activated its flashers, and the driver waved the children across Ten Mile Road, a divided highway with a posted speed limit of fifty miles per hour.

On June 2, 1989, Adrian and Lauren Dedes were walking toward their bus stop when they were hit by a car. It is disputed whether the girls stepped into traffic or were behind the white line on the shoulder when they were struck.

The plaintiffs, the parents of the children, brought negligence actions against the defendants.

The plaintiffs assert that the children were conditioned to be anxious about missing their bus, which they were told would not wait if they were late in arriving at their bus stop. They allege that the location of the bus stop was unsafe because it required the children to cross a highly traveled major highway, and that a safer route could have been designed. Plaintiffs also assert that defendant Shifford changed the location where the children were to wait for the bus from the top of the hill to the gravel adjoining Ten Mile Road.

The defendants, in separate motions for summary disposition, argued that pursuant to MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), they were immune from suit as governmental employees. With regard to defendant Asch, the trial court ruled that assuming arguendo Asch was grossly negligent, she was not "the" (meaning "the sole") proximate cause of the injury. Regarding defendant Shifford, the trial court ruled that her conduct was also not "the" proximate cause of the accident.

The plaintiffs appealed. A divided Court of Appeals panel affirmed. The majority held that under the plain language of MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), "neither Asch's nor Shifford's alleged negligence could have been *the* proximate cause of the children's injuries." 199 Mich App 385, 391; 502 NW2d 720 (1983) (emphasis in original). The dissent disagreed and would not have literally applied the statute. *Id.* at 395.

The plaintiffs appealed and we granted leave to appeal, 444 Mich 902 (1993).

II

"The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this sub-

division, 'gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(2)(c); MSA 3.996(107)(2)(c). Of the forty-seven words in this subsection of the government immunity from tort liability statute, the parties focus on one "the," as in "the proximate cause." The defendants contend that "the proximate cause" means "the sole proximate cause." The plaintiffs argue that "the proximate cause" means "a proximate cause." The question presented is, in the context of the governmental immunity statute, does "the" mean, "the sole," "a," or something else. The question is narrowly focused. The answer has profound consequences for the course of future litigation involving the government.

The defendants submit that the Legislature selected the phrase "the proximate cause" as part of an effort to protect governmental employees from tort liability. Thus, defendants urge, not only did the Legislature establish gross negligence as a higher barrier to employee liability, but it adopted a sole proximate cause standard to eliminate employee liability where there was any intervening or concurrent fault by the plaintiffs or another defendant.

The plaintiffs respond by observing that if the Legislature intended to preclude liability even where gross negligence is shown, simply because the plaintiffs or another defendant was also negligent, and if it intended to overturn the doctrine of comparative negligence established in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1970), the legislative history would evidence that intent. We agree with the plaintiffs. The statute is ambiguous. Absent any indication of support for the defendants' position, other than the word "the," we cannot conclude the Legislature in-

tended to take the drastic step of reestablishing contributory negligence and eliminating recovery when more than one tortfeasor contributes to the plaintiff's injury. Such a construction strains "plain meaning" analysis to the breaking point.

A

The defendants claim that the words of the statute, "gross negligence that is the proximate cause of the injury" are clear and unambiguous, and construction or interpretation is unnecessary and therefore, precluded. The asserted clarity in this case comes from the dictionary definition of the word "the," as well as the common-law history surrounding the phrase, "the proximate cause" when used to instruct a jury.

"A general rule of statutory construction is that '[w]ords or phrases shall be read in context and construed according to the rule of grammar and common usage,'" *Duer v Newaygo Sheriff,* 420 Mich 440, 445; 362 NW2d 698 (1984), cert den 471 US 1136 (1984), and "[w]hat is 'plain and unambiguous' often depends on one's frame of reference." *Shiffer v Gibraltar Bd of Ed,* 393 Mich 190, 194; 224 NW2d 255 (1974). The defendants contend that because "the" is a definite article while "a" is usually indefinite,[1] the Legislature's use of the word "the" preceding "proximate cause" demonstrates a clear intent to limit liability to only those circumstances in which the defendant is the sole

---

[1] See Black's Law Dictionary (5th ed), p 1324:

The. An article which particularizes the subject spoken of. "Grammatical niceties should not be resorted to without necessity; but it would be extending liberality to an unwarrantable length to confound the articles 'a' and 'the.' The most unlettered persons understand that 'a' is indefinite, but 'the' refers to a certain object."

proximate cause. This plain meaning argument is buttressed by authority from this Court that recognizes a distinction between the use of "a proximate cause" versus "the proximate cause" in jury instructions.

The source of the surface appeal of the argument is an instructional issue involving proximate cause, of which the practicing bar is acutely aware. However, it cannot be safely assumed that every courtroom connotation is a part of the legislative culture. While to lawyers the phrase "the proximate cause" implies "sole cause" heresy,[2] it is incorrect to conclude that therefore "the" means sole. "The" cause language is inappropriate because "the" is ambiguous and might be understood by the jury to mean either "a" cause or the "sole" cause.[3] Thus, where the proofs raise a question regarding whether more than one party's negligence caused the injury, and the jury is not instructed that there can be more than one proximate cause, reference to "the" and "a" proximate cause is instructional error. As we observed in *Kirby v Larson,* 400 Mich 585, 607; 256 NW2d 450 (1977):

> While it is true that the instructions might have been interpreted to mean a proximate cause, it is

[2] Through all the diverse theories of proximate cause runs a common thread; almost all agree that defendant's wrongful conduct must be a cause in fact of plaintiff's injury before there is liability. This notion is not a metaphysical one but an ordinary, matter-of-fact inquiry into the existence or nonexistence of a causal relation as lay people would view it. Clearly this is not a quest for a sole cause. Probably it cannot be said of any event that it has a single causal antecedent; usually there are many. [4 Harper, James & Gray, Torts (2d ed), § 20.2, pp 89-91.]

[3] See also *Sedorchuk v Weeder,* 311 Mich 6, 10-11; 18 NW2d 397 (1945); *Barringer v Arnold,* 358 Mich 594, 599-600; 101 NW2d 365 (1960).

also equally true that the jury might have contemplated otherwise.

Moreover, where used to describe the cause in fact of the injury, "the" and "a" are interchangeable and "the" does not mean "sole." As noted by the author of the Restatement:

> In many cases the question before the court is whether the actor's negligence was in fact *the cause* of the other's harm—that is, whether it had any effect in producing it—or whether it was the result of some other cause, the testimony making it clear that it must be one or the other, and that the harm is not due to the combined effects of both. [Restatement Torts, 2d, § 431, comment b, p 429. Emphasis added.]

Finally, it is both common and grammatically correct usage, to employ "the cause" language to describe this cause and effect inquiry. Thus, for example, the standard jury instruction uses the phrase "that *the* negligence of the defendant was a proximate cause of the [injuries/damages] to the plaintiff." SJI2d 16.02. Our precedent does not support the argument that where the jury is clearly instructed that cause in fact or law need not be the sole cause, the substitution of "the" for "a" is error.[4]

The common-law relationship between gross negligence and proximate cause introduces a further ambiguity that undermines the plain-meaning argument.

In Michigan, gross negligence was the vehicle advanced to overcome the contributory negligence

---

[4] The Legislature itself uses "the" cause and effect language to describe a category of cases in which liability will attach, "resulting from *the* negligent operation . . . of a motor vehicle." MCL 691.1405; MSA 3.996(105) illustrates that one function of the word is simply to denote the relationship that can result in liability.

bar to recovery. In Cooley on Torts, gross negligence is explained:

> "If, therefore, the defendant discovered the negligence of the plaintiff in time, by the use of ordinary care, to prevent the injury, and did not make use of such care for the purpose, he is justly chargeable with reckless injury, and cannot rely upon the negligence of the plaintiff as a protection. Or it may be said that in such a case the negligence of the plaintiff only put him in a position of danger, and was, therefore, only the remote cause of the injury, while the subsequently intervening negligence of the defendant was *the* proximate cause." [*Fike v Pere Marquette R Co,* 174 Mich 167, 205; 140 NW 592 (1913), quoting Cooley, p 674. Emphasis added.]

Put another way, "where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the *precedent negligence* of the plaintiff, by his *subsequent negligence* does plaintiff an injury," he is guilty of gross negligence and is the proximate cause of the plaintiff's injury, regardless of the plaintiff's negligence. *Gibbard v Cursan,* 225 Mich 311, 319; 196 NW 398 (1923) (emphasis in original).

Although "[t]he continued validity of this definition was recently questioned by this Court because of the abolition of contributory negligence as an affirmative defense in this state," *Malcolm v East Detroit,* 437 Mich 132, 147; 468 NW2d 479 (1991),[5] referring to *Burnett v City of Adrian,* 414 Mich 448; 326 NW2d 810 (1982), it was the law in . Michigan at the time of adoption of this statute.[6]

---

[5] *Malcolm* noted that Michigan's definition of gross negligence appears to be identical to "the last clear chance doctrine." *Id.* at 147.

[6] In *Jennings v Southwood,* 446 Mich 125; 521 NW2d 230 (1994), this Court declined to apply the *Gibbard* version of gross negligence to the emergency medical services act, MCL 333.20701 *et seq.*; MSA

Therefore, in the context of the common-law relationship between gross negligence and proximate cause, the statute's reference to "the proximate cause" may mean not that the government employee's conduct is the sole proximate cause, but the last proximate cause. The Legislature may have intended "gross negligence that is the proximate cause of the injury" to mean that in cases of the defendant's subsequent negligence, immunity is not available because the conduct is *the* proximate cause of the plaintiff's injury[7] regardless of the plaintiff's preceding negligence or its degree.[8]

This understanding of "the" is inconsistent with defendants' contention that "the" means that any negligence of plaintiffs will defeat liability, irrespective of defendants' gross negligence. Adding to the confusion, gross negligence is not defined in the statute as it was at common law. Instead, the Legislature created a specific definition of the term in the statute itself.

---

14.15(20701) *et seq.* Our discussion of *Gibbard,* like the discussion in *Jennings* and *Boroditsch,* is simply an aid in determining what the Legislature intended when it drafted the government tort liability act and is not meant as an endorsement of the continued validity of *Gibbard* at common law.

[7] The issue of a second defendant's concurrent negligence does not present itself in the old gross negligence cases because of the existence of joint and several liability.

[8] See *Fike, supra* at 205 where this Court noted:

See . . . *Donohue v [St Louis, I M & S R Co*], 91 Mo 357 [365] (2 SW 424, 3 SW 848) [1886], in which it was said:
"Counsel indulges in a criticism of the cases in which this court has held that if the negligence of a defendant, which contributed directly to cause the injury, occurred after the danger in which the injured party had placed himself by his own negligence, was, or by the exercise of reasonable care might have been, discovered by the defendant in time to have averted the injury, then defendant is liable, however *gross* the negligence of the injured party may have been in placing himself in such position of danger. Such is the well-established doctrine of this court. [Emphasis in original.]

MCL 691.1407(2)(c); MSA 3.996(107)(2)(c) pro-
vides, "[a]s used in this subdivision, 'gross negli-
gence' means conduct so reckless as to demon-
strate a substantial lack of concern for whether an
injury results."[9] The new definition seems to imply
a rejection of the subsequent negligence require-
ment of common-law gross negligence and an
adoption of what in the past has been confusingly
called gross negligence,[10] but is instead more akin
to "wilful, wanton or reckless misconduct . . . ."[11]
*Gibbard, supra* at 320.

Wilful, wanton, or reckless misconduct does not
rely on the subsequent negligence justification of
Michigan's common-law gross negligence to avoid
the contributory negligence bar. Wilful, wanton, or
reckless misconduct is different in kind, not in
time. In *Gibbard,* the Court noted with approval
the following description of such conduct:

"Although what is really reckless and wanton
misconduct is sometimes spoken of as gross negli-
gence, the expression is everywhere recognized as
inaccurate and unfortunate, because it seems to
imply a difference only of degree, whereas the
whole doctrine that contributory negligence is no
defense where the injury is the result of reckless-
ness and wantonness is based upon the theory of a
difference in kind. For the same reason, the phrase
'reckless and wanton negligence' has a misleading
tendency. One who is properly charged with reck-
lessness or wantonness is not simply more careless

---

[9] The statutory definition of gross negligence was novel. At the time
of its enactment, of the thirty-four Michigan statutes that employed
the term, only MCL 691.1407(2)(c); MSA 3.996(107)(2)(c) inserted its
own definition. See *Pavlov v Community EMS, Inc,* 195 Mich App 711,
722, n 6; 491 NW2d 874 (1992), for a listing of statutes employing the
term "gross negligence."

[10] See *Burnett, supra* at 463-466 (MOODY, J., concurring).

[11] *Jennings, supra,* discusses the differences between wilful and
wanton misconduct. Our mention of those terms in this case is not
meant to alter or modify the analysis in *Jennings.*

than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not." [*Gibbard, supra* at 321, quoting *Atchison, T & S F R Co v Baker,* 79 Kan 183, 189-190 (98 P 804) (1908).][12]

The legislative development of the governmental immunity act tends to support the different in kind, not time, interpretation of statutory "gross negligence." The operative section of original Senate Bill 465 (introduced October 2, 1985) provided:

(C) The officer's or employee's negligence does not amount to gross negligence or willful and wanton misconduct.

While this provision suggested recovery under common-law gross negligence *or* wilful and wanton misconduct, SB 465 was amended on October 15, 1985, to state:

---

12 See also *Sun Oil Co v Seamon,* 349 Mich 387, 411; 84 NW2d 840 (1957), in which Justice TALBOT SMITH observed:

The reasoning behind these cases is clear: Wanton misconduct is a different kind of offense than ordinary negligence, even though it be gross. Fault is involved in both, but in the one the fault of the callous, the brutish, the quasi-criminal, in the other the human frailty of lack of care, of inattention, of diversion. These are faults of different hues in the spectrum of human conduct and so the courts have treated them. Our Court should do likewise.

See also *LaCroix v Grand Trunk W R Co,* 379 Mich 417; 152 NW2d 656 (1967).

An officer or employee of a governmental agency shall not be immune from tort liability where the gross negligence of the officer or employee is the proximate cause of an injury. For the purposes of this section, gross negligence means conduct so wanton or reckless as to demonstrate a lack of concern for whether an injury results.

Although the definition found in the present statute no longer contains the word "wanton" and has added "substantial" before "lack," the Legislature's rejection of the common-law definition raises the possibility that the difference is one of kind, not of time.[13]

It remains unclear from the language of the statute how the Legislature intended the new definition of gross negligence to affect its common-law companion, proximate cause. While Prosser and Keeton note that "[s]ome courts have said that in such cases [involving wanton, willful or reckless conduct] the plaintiff's conduct is not the 'proximate cause' of the harm,"[14] Michigan's common-law history regarding the relationship between wilful, wanton, and reckless conduct and proximate cause is unclear. The different in kind rationale based on "the social condemnation attached to" the tortious act, Prosser & Keeton, Torts (5th ed), § 65, p 462, has long foreclosed a defendant's ability to raise a contributory negligence defense to a claim of wilful, wanton, and reckless misconduct.[15]

---

[13] Subsequent negligence may still fall within the statutory definition of gross negligence. Our purpose is only to note that the statute does not require subsequent negligence.

[14] They criticize this approach: "the causal connection appears to be basically the same as in any ordinary contributory negligence case. It is perhaps more a form of comparative fault, where the court is refusing to set up the lesser fault against the greater." Prosser & Keeton, Torts (5th ed), § 65, p 462.

[15] Michigan has recognized the inapplicability of a contributory negligence defense in these cases for over a hundred years:

Curiously, in the wider common-law context, when "the" is examined, defendants' literal interpretation of MCL 691.1407(2)(c); MSA 3.996(107)(2)(c) might prevent it from pleading negligence on the part of others as an affirmative defense. The word "the" would thus require another abrogation of the current common law of Michigan, which recognizes a defendant's ability to claim comparative negligence on the part of the plaintiff. *Placek, supra.*

B

Having concluded that the plain-meaning approach is incapable of providing clear guidance regarding the meaning of MCL 691.1407(2)(c); MSA 3.996(107)(2)(c), we turn to the history of the statute.[16] That history provides no support for the defendants' claim that the Legislature intended the enormous, and unprecedented, impact the word "the" would have on Michigan's tort law, and in fact establishes that no importance was attached to the word "the" or "proximate cause."

The history of MCL 691.1407; MSA 3.996(107) demonstrates a desire by the Legislature to remedy the perceived vulnerability of government employees by elevating the level of negligence required to defeat immunity:

> The defendants being guilty of reckless negligence under the circumstances disclosed by the testimony in running their train without keeping a proper lookout, and in consequence thereof having run over plaintiff, and injured her, the question of contributory negligence does not arise, even had the plaintiff been of that age at which the law would have imposed upon her the duty of exercising due care to avoid injury. [*Battishill v Humphreys,* 64 Mich 514, 521; 38 NW 581 (1888).]

[16] This history is made up of various House and Senate legislative analysis documents, earlier versions of the bill, and entries into the House and Senate Journals.

The bill would extend immunity to governmental employees, however, who are rightfully angered and fearful of the ruling in *Ross* [v *Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984)] that protects the highest level of officials while leaving the backbone of government —the worker—vulnerable. By creating a loophole through which plaintiffs' attorneys can slip, *Ross* actually threatens to subject governmental units to increased liability, by indemnification of liable employees. At the same time, the ruling threatens to inhibit employees in effectively performing their lawful duties. Thus, the bill would close the loophole and protect these employees as long as they acted within the scope of their authority and their actions did not amount to gross negligence, and the bill would make it clear that the *Ross* discretionary/ministerial test no longer applied. [SB 465-467, First Analysis, Senate Analysis Section, supporting argument, p 8, October 14, 1985.][17]

While the initial Senate bill did not mention proximate cause, the second Senate bill referred to gross negligence that was "the" proximate cause of the injury, bringing it in line with the language used in the House version. However, the bill summaries provided by the Senate and House Legislative Analysis offices differed in how they referred to proximate cause. In "[t]he content of the bill" section, the First and Second Analyses of the House bill noted: "[t]he officer's or employee's negligence did not amount to gross negligence which was the proximate cause of an injury." The arguments for the provision, as stated above, do not mention the proximate cause language. Neither do the arguments against, which focus on the gross negligence standard. The Senate Bill Analyses, both of which were issued after the Senate bill

---

[17] Identical language appeared in Second Analysis, Senate Analysis Section, p 9. Nearly identical language appeared in House Legislative Analysis Section, HB 5163, First and Second Analyses.

was amended to include the reference to proximate cause and a definition of gross negligence, observed in the "[c]ontent" section: "[a]n officer or employee would not be immune, however, where his or her gross negligence was *a* proximate cause of an injury" (p 4 in the First Analysis; p 4 in the Second Analysis). (Emphasis added.)[18] Again, neither the arguments in favor of nor against the bill mention proximate cause.

The fact that the Senate Bill Analyses attached so little meaning to the word "the" preceding proximate cause that they substituted the word "a" in their explanation of the section is some evidence that the Legislature did not understand or intend the dramatic effect the use of the word "the" might have on Michigan's jurisprudence.[19] Indeed, if the Legislature had such a sophisticated grasp of the connotations of "a" and "the" and the consequences for employee liability, there is no reason it could not have said "sole" proximate cause.

As proposed and enacted, the legislation protected employees and eliminated the *Ross* distinction between ministerial and discretionary activities, extended protection to volunteers, raised the standard from negligence to gross negligence, and specifically defined gross negligence. All these purposes were noted and commented on as the bill took its final form. It defies common sense and the responsible exercise of our authority to conclude that the Legislature would have provided protection tantamount to eliminating liability without having commented on it.

---

[18] Both of the Senate Analysis Section analyses refer to language in the original and the amended Senate bills.

[19] While Senator Pollack, using her constitutional right to protest, Const 1963, art 4, § 18, mentioned the gross negligence standard, she did not mention or attach any significance to the proximate cause requirement.

We reject the notion that reestablishment of the contributory negligence bar to recovery was accomplished without anyone mentioning it in a Senate or House Analysis, or in the House or Senate Journal. While the establishment of a gross negligence threshold to liability was discussed, and is significant, it is of relatively minor consequence when compared to the reestablishment of common-law contributory negligence. Indeed, if the Legislature intended the barriers to liability claimed for the use of the word "the," the gross negligence standard, for all practical purposes, would be redundant.

As significant as the reimposition of a complete bar to recovery if the plaintiff is slightly negligent is, it is relatively inconsequential when compared to the unprecedented abrogation of the common-law rule that "[t]here may be more than one proximate cause for the same injury, and the mere fact that some other cause co-operates with the negligence of the defendant to produce the injury for which suit is brought does not relieve him from liability." *Camp v Wilson,* 258 Mich 38, 42; 241 NW 844 (1932). This long recognized fundamental tenet of tort law, under the defendants' reasoning, would be abolished in favor of a rule that would allow negligence on the part of another tortfeasor, no matter how slight, to relieve the governmental employee of all liability. Again, as with contributory negligence, the Legislature could have meant to modify the common law. It is almost inconceivable, however, that it would do so without anyone noticing.

This is not a case in which the practical effect of a certain statutory provision was difficult to foresee at the time it was enacted, making legislative comment unlikely. MCL 691.1407(2); MSA 3.996(107)(2) was intended to limit the liability of

governmental employees. The construction of proximate cause advanced by the defendants would limit that liability enormously, much more so than the gross negligence standard. Yet it is the latter and not the former that received all of the attention. A silent legislative record often says very little about the meaning of a statute; but often is not always, and in this case the legislative silence is convincing.

These observations suggest that the protections allegedly erected by the word "the" rest on the proverbial slender reed.

For the foregoing reasons, we conclude that the plain meaning argument cannot carry the day. The meaning of "the" is not plain. More importantly, however, as this case illustrates, interpreting legislation is a practical problem rather than simply a dialectic exercise. As Justice Felix Frankfurter aptly observed:

> "The intrinsic difficulties of language and the emergence after enactment of situations not anticipated by the most gifted legislative imagination, reveal doubts and ambiguities in statutes that compel judicial construction. The process of construction, therefore, is not an exercise in logic or dialectic: The aids of formal reasoning are not irrelevant; they may simply be inadequate. The purpose of construction being the ascertainment of meaning, every consideration brought to bear for the solution of that problem must be devoted to that end alone. To speak of it as a practical problem is not to indulge a fashion in words. It must be that, not something else. Not, for instance, an opportunity for a judge to use words as 'empty vessels into which he can pour anything he will'—his caprices, fixed notions, even statesmanlike beliefs in a particular policy. Nor, on the other hand, is the process a ritual to be observed by unimaginative adherence to well-worn profes-

sional phrases." [*LaGuire v Kain,* 440 Mich 367, 398, n 24; 487 NW2d 389 (1992), quoting Frankfurter, *Some reflections on the reading of statutes,* 47 Col L R 527, 529 (1947).]

### III

In the end, when read in the context of the text of the statute, its purpose, background, and structure, we conclude that the interpretive force of the literal language is less significant than the force of other factors. As six members of this Court agreed in *In re Certified Question,* 433 Mich 710, 723; 449 NW2d 660 (1989):

> Ultimately, " '[t]he particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be understood or what understanding do they convey as used in the particular act.' "

There being *no* evidence that the Legislature intended to dramatically rewrite Michigan's common-law causation principles when it used the word "the" between "gross negligence" and "proximate cause," a result accomplished no matter which way "the," as a definite article, is interpreted in the context of the statute, we reject a literal interpretation. The Legislature intended to limit governmental employee liability to those situations in which the conduct at issue was substantially more than negligent. That is how we interpret the statute. The word "the" before "proximate cause" is not to be read to limit recovery if the plaintiff or another is also a cause of the accident. It is also not to be read to prevent a defendant from claiming comparative negligence as a defense.

We reverse the decision of the Court of Appeals and remand for further consideration consistent with this opinion.

CAVANAGH, C.J., and LEVIN and MALLETT, JJ., concurred with BOYLE, J.

RILEY, J. (*dissenting*). Because the majority ignores the plain meaning of MCL 691.1407(2); MSA 3.996(107)(2) by eradicating governmental immunity for state employees who were not the sole cause of an injury, I respectfully dissent.

I

MCL 691.1407(2); MSA 3.996(107)(2) mandates in pertinent part:

> [E]ach . . . employee of a governmental agency . . . shall be immune from tort liability for injuries to persons or damages to property caused by the . . . employee . . . while in the course of employment . . . while acting on behalf of a governmental agency if all of the following are met:
> (a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The . . . employee's . . . conduct *does not amount to gross negligence that is the proximate cause of the injury or damage.* As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack· of concern for whether an injury results. [Emphasis supplied.]

" 'The cardinal rule of statutory construction is to ascertain and give effect to the intention of the legislature.' " *City of Lansing v Lansing Twp,* 356

Mich 641, 648; 97 NW2d 804 (1959), quoting *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). As the law-making branch of government, the Legislature is presumed to understand the meaning of the language it places into law, therefore, "[s]tatutory analysis necessarily begins with the wording of the statute itself." *Carr v General Motors Corp,* 425 Mich 313, 317; 389 NW2d 686 (1986). Hence, each word is "presumed to be made use of for some purpose," and "so far as possible, effect must be given to every clause and sentence." *Univ of Michigan Bd of Regents v Auditor General,* 167 Mich 444, 450; 132 NW 1037 (1911). Accordingly, the Court may not ignore, substitute or redefine language, *People v Crucible Steel Co of America,* 150 Mich 563, 567; 114 NW 350 (1907), or assume that the Legislature inadvertently utilized one word or phrase instead of another. *Detroit v Redford Twp,* 253 Mich 453, 456; 235 NW 217 (1931). This Court, therefore, must follow the unambiguous and clear dictate of a statute. *City of Lansing, supra* at 649.

Furthermore, the Legislature is presumed to use words that have been subject to judicial interpretation in the sense in which they have been interpreted. MCL 8.3a; MSA 2.212(1). See also *Kirkley v General Baking Co,* 217 Mich 307, 316; 186 NW 482 (1922). If, however, "the literal construction of a statute . . . would produce an absurd and unjust result" the Court may deviate from such an interpretation to conform with the "purposes and policies of the act in question." *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976).

These rules of statutory construction are especially appropriate in the instant case because Michigan strictly construes statutes imposing liability on the state in derogation of the common-law rule of sovereign immunity. See, e.g., *Detroit v*

*Putnam,* 45 Mich 263, 265; 7 NW 815 (1881);
*Johnson v Ontonagon Co Bd of Co Rd Comm'rs,*
253 Mich 465, 468; 235 NW 221 (1931). Moreover,
"[c]ourts should take care not to confuse their
inquiries into immunity and negligence." *Canon v
Thumudo,* 430 Mich 326, 335; 422 NW2d 688
(1988).[1]

II

At issue in the instant case is the interpretation
of the phrase "the proximate cause." The majority
finds that the language "the proximate cause"
does not mean what it says. The majority holds
that "the proximate cause" truly means "a proxi-
mate cause." This interpretation of the phrase is
in clear derogation of the phrase's plain and obvi-
ous meaning. Black's Law Dictionary (5th ed), p
1324, for instance, defines "the" as "[a]n article
which particularizes the subject spoken of." The
dictionary continues:

"Grammatical niceties should not be resorted to
without necessity; but it would be extending liber-
ality to an unwarrantable length to confound the
articles 'a' and 'the.' The most unlettered persons
understand that 'a' is indefinite, but 'the' refers to
a certain object."

Thus, "the proximate cause" means "the sole
proximate cause" and not merely "any or a proxi-
mate cause." Nevertheless, the majority, refusing
to join the most unlettered persons, reaches be-
yond the clear language of the statute to find a

[1] This Court has repeatedly recognized that legislative action, past
and present, on the issue of governmental immunity "evidences a
clear legislative judgment that public and private tortfeasors should
be treated differently." *Ross v Consumers Power Co (On Rehearing),*
420 Mich 567, 618; 363 NW2d 641 (1985); see also *Wade v Dep't of
Corrections,* 439 Mich 158, 170; 483 NW2d 26 (1992).

hidden and metaphysical meaning of this simple phrase. To defeat this clear meaning, the majority inconclusively delves into the common law and legislative enactments, as well as silent legislative history.

Yet, the language "is plain, unambiguous and not subject to different interpretation by 2 reasonable minds. It is clear, definite, and would be easily understood by even those not trained in the law. The language of this statute, therefore, leaves no room for judicial construction." *City of Lansing, supra* at 649. Nor does this interpretation lead to an "absurd" result. After all, historically the state immunized itself from all tort liability, that the Legislature would choose to permit liability only under strict circumstances is not absurd, but simply one of many solutions to a difficult and complex policy issue.

Not only does the majority ignore the obvious meaning of the phrase, it also ignores our previous interpretation of the exact language. The distinction between "the proximate cause" and "a proximate cause" was well recognized in Michigan at the time of the enactment of the legislation at issue. Indeed, this Court has long interpreted the phrase "the proximate cause" as one that is "tantamount to an instruction that, before plaintiff could recover, he must show that defendant's negligence was 'the sole' proximate cause of the accident." *Sedorchuk v Weeder,* 311 Mich 6, 10-11; 18 NW2d 397 (1945) (rejecting such a charge in a traditional negligence suit because it precluded the possibility that there might be more than one proximate cause).[2] The Legislature itself has man-

_____

[2] See also *Schattilly v Yonker,* 347 Mich 660, 670; 81 NW2d 343 (1957) (finding a charge referring to "the proximate cause" erroneous because " 'a' proximate cause" was proper); *Reynolds v Majewski,* 351 Mich 492, 497; 88 NW2d 405 (1958) (holding a charge referring to

dated that previously defined terms should be interpreted consistently with prior constructions of this Court. MCL 8.3a; MSA 2.212(1).

The majority's holding appears to be based on the conclusion that the Legislature could not have been so unwise as to have intended to limit liability in this fashion. Yet, the wisdom, fairness, or incongruity of the statute is not our concern. *Melia, supra* at 561. Furthermore, the majority's proposition that the lack of debate regarding the specific language at issue somehow makes clear language ambiguous, inverts statutory construction—only statutes ambiguous on their face justify judicial review of legislative history. After all, the clearest revelation of legislative intent is the actual language of the statute. To find that a silent legislative record somehow deletes clear language is simply too incredulous to rebut.

If the Legislature acted unwisely in enacting the statute or failing to adequately debate its merits, the judiciary may not act to save the Legislature from its folly. As long as they do not violate the constitution, legislative controversies are to be resolved by the various democratic safeguards and checks in the constitution: ballot box,[3] initia-

---

"the real cause" erroneous because "[t]he phrase should have read, 'a real cause of the accident' "); *Barringer v Arnold,* 358 Mich 594, 599-600; 101 NW2d 365 (1960) (finding a charge that a defendant must be "the proximate cause" erroneous); *Kirby v Larson,* 400 Mich 585, 605; 256 NW2d 400 (1977) (holding that an instruction that the defendant must be "the proximate cause" was "tantamount to an instruction that plaintiff cannot recover unless defendant's negligence is the sole proximate cause of an accident, an interpretation completely ignoring the possibility that there may be two proximate causes"); *Moerman v Kalamazoo Co Rd Comm,* 129 Mich App 584, 598; 341 NW2d 829 (1983) (noting the distinction between "a proximate cause" and "the proximate cause"). Cf. *Attorney General v Kent Co Rd Comm,* 184 Mich App 525, 527; 459 NW2d 11 (1990) (finding that MCL 600.1615; MSA 27A.1615, which mandates that the home county of a governmental unit is "the proper county" for venue, provides for one proper county for venue).

[3] Const 1963, art 2, § 8 ("Laws shall be enacted to provide for the

tive,[4] referendum,[5] or constitutional amendment.[6] The majority, however, stifles and denigrates these processes by reaching beyond the plain language of the act and crafting a new statute reflective of its sensibilities. Because this is not our role in the constitutional order, I respectfully dissent.

Brickley and Griffin, JJ., concurred with Riley, J.

recall of all elective officers except judges of courts of record"); art 4, § 2 (senators are to be elected every four years); art 4, § 3 (representatives are to be elected every two years); art 5, § 21 (the Governor is to be elected every four years).

[4] Const 1963, art 2, § 9 ("The people reserve to themselves the power to propose laws and to enact and reject laws, called the initiative").

[5] Id. ("The people reserve to themselves . . . the power to approve or reject laws enacted by the legislature, called the referendum.")

[6] Const 1963, art 12, §§ 1-3 (outlining three methods to amend the state constitution).